Philip BEISER, by Charles Beiser, His Next Friend, Plaintiff-Appellant,

v.

PARKWAY SCHOOL DISTRICT, Defendant-Respondent.

No. 61186.

Supreme Court of Missouri, En Banc.

Nov. 14, 1979.

Rehearing Denied Dec. 6, 1979.

---

Robert C. Ely, Ely & Wieland, St. Louis, for plaintiff-appellant.

W. Munro Roberts, Jr., St. Louis, for defendant-respondent.

SEILER, Judge.

This is an appeal in a personal injury case from a judgment of the Circuit Court of St. Louis sustaining defendant school district's motion to dismiss on the ground of the doctrine of sovereign immunity. This case was transferred here by the court of appeals under Rule 83.02 for resolution of an apparent conflict in the decisions of the Court concerning the meaning to be given the term "municipality." We will treat this case as if here on original appeal. Mo. Const. art. V, § 10.

Appellant was a student at Parkway South Junior High School on May 28, 1976, the date the alleged injury occurred.[1]

1. In *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), this court prospectively abolished governmental immunity, effective August 15, 1978. The delay was allowed, among other reasons, in order to permit the legislature to determine whether to reinstate immunity by statute. It has done so, § 537.600, RSMo 1978. In any case, it is clear that the doctrine of sovereign immunity existed prior to August 15, 1978, and in particular served to protect school districts. *O'Dell v. School District of Independence*, 521 S.W.2d 403 (Mo. banc 1975); *Rennie v. Belleview School District*, 521 S.W.2d 423 (Mo. banc 1975).

While he was attending an industrial art class, a fellow student attempted to insert a drill bit into a drill press. The drill bit flew from the drill press and struck appellant in his right eye, resulting in loss of the eye. Appellant filed suit against respondent school district, alleging that his injuries were a result of respondent's negligence.

Appellant asserts that the school district is a "municipality" for the purpose of § 71.185, RSMo 1978. Accordingly, appellant contends that respondent is liable under the statute to the extent of its insurance coverage.[2] The sole question on appeal, then, is whether a school district is a municipality for the purposes of § 71.185, which establishes a limited exception to the doctrine of sovereign immunity as it applies to municipalities.[3]

Appellant cites as authority in this case dicta from two cases which broadly define the term "municipal corporation" for the purpose of exempting the properties of certain political subdivisions from taxation. In *State ex rel. Caldwell v. Little River Drainage District*, 291 Mo. 72, 236 S.W. 15 (1921), the Court stated that there is a presumption that the state does not intend to tax political subdivisions and therefore a political subdivision must be considered "a municipal corporation within the meaning of the term *as used in the provision of the Constitution dealing with tax exemptions* . . . ." 236 S.W. at 17 (emphasis added). Appellant relies upon the dicta in *Caldwell* that the term "municipal corporation" is applied to political subdivisions exercising

functions of government and "hence includes counties, school districts, townships . . . special road districts and drainage districts." *Id.* at 16. But in *Caldwell* it is clear that the Court includes school districts within the term solely for the purpose of finding them to be exempt from taxation: "It is plain that if the property not only of school districts, but of organized townships and special road districts as well, are expressly exempted from taxation by the Constitution, it is because they are 'other municipal corporations.'" *Id.*

Appellant also cites *Larat Investment Co. v. Dickman*, 345 Mo. 449, 134 S.W.2d 65 (banc 1939), a case which considered whether the Housing Authority of the City of St. Louis was exempt from state taxation as a "municipal corporation." *Larat Investment* cites language from the *Caldwell* decision and the fact that the General Assembly expressly declared the housing authority to be a "municipal corporation", holding that the housing authority, like the drainage district in *Caldwell*, was entitled to a tax exemption. These cases, and dicta in subsequent cases that cite them, *St. Louis Housing Authority v. City of St. Louis*, 361 Mo. 1170, 239 S.W.2d 289 (banc 1951) (holding that the housing authority, as a municipal corporation, had constitutional and statutory authority to enter into a cooperation agreement); *State ex rel. Crites v. West*, 509 S.W.2d 482 (Mo.App.1974) (holding that a fire district can be dissolved only as provided by statute), are not persuasive au-

---

**2.** There is no contention that the school district has waived sovereign immunity protection by securing liability insurance or that the school district could be held liable in any event beyond the amount of the insurance so carried. Appellant's theory of recovery was based solely upon § 71.185, RSMo 1978.

**3.** The statute, first enacted in 1959, provides:
"1. Any municipality engaged in the exercise of governmental functions may carry liability insurance and pay premiums therefor to insure such municipality and their employees against claims or causes of action for property damage or personal injuries, including death, caused while in the exercise of the governmen-

tal functions, and shall be liable as in other cases of torts for property damage and personal injuries including death suffered by third persons while the municipality is engaged in the exercise of the governmental functions to the extent of the insurance so carried.

"2. In all suits brought against the municipality for tort damages suffered by anyone while the municipality is engaged in the exercise of governmental functions, it shall be unlawful for the amount of insurance so carried to be shown in evidence, but the court shall be informed thereof and shall reduce any verdict rendered by a jury for an amount in excess of such insurance to the amount of the insurance coverage for the claim."

thority for the contention that school districts are "municipalities" for the purposes of § 71.185, RSMo 1978.

In *City of Olivette v. Graeler*, 338 S.W.2d 827, 835 (Mo.1969), the Court considered the meaning of the term "municipal corporation" for the purpose of the Sawyer Act and held that the municipal services performed by a county do not "make the legal status of a charter county equivalent to that of an incorporated city." 338 S.W.2d at 836. The Court noted the cases applying a strict reading of the term "municipal corporation" to include only "cities, towns and villages, having subordinate and local powers of legislation" (*Heller v. Stremmel*, 52 Mo. 309 (1873)), and the larger scope urged by appellant that includes "any public local corporation, exercising some function of government and includes counties [and] school districts . . . " (*Caldwell, supra* at 16). But the Court observed that "[t]he same word, term or phrase may vary in meaning depending on the time, place and circumstances under which it is used." 338 S.W.2d at 835.

■ Here the statute in question does not even use the term "municipal corporation" which, as discussed above, has been used in a variety of contexts with a varying scope. Rather, § 71.185 uses the term "municipality." While a municipality may be a municipal corporation in either construction of the term, not all municipal corporations are municipalities. *See City of Olivette, supra*. Even assuming that a school district may be a municipal corporation for certain limited purposes, it does not follow that a school district is, therefore, a "municipality" for the purposes of the statute in question.

■ In *State ex rel. Conservation Commission v. Le Page*, 566 S.W.2d 208, 212 (Mo. banc 1978), we stated the general rule in construing the language of statutes: "Words used in statutes are to be considered in their plain and ordinary meaning to ascertain the intent of the lawmakers." Under this rule, the plain and ordinary meaning of the term "municipality" does not indicate an intent of the legislature to include school districts within the meaning of § 71.185. The legislature could have used the more inclusive term "public entity" if that were the scope intended; indeed, in the recent sovereign immunity statute the legislature used the term "public entity." § 537.600, RSMo 1978.

■ We recently stated the rule of construction that statutory provisions that waive sovereign immunity are construed strictly. *Charles v. Spradling*, 524 S.W.2d 820 (Mo. banc 1975). Section 71.185 undoubtedly waives the sovereign immunity of a municipality for torts committed while exercising a governmental function if and to the extent the municipality carries liability insurance. In applying a strict construction to the statutory provision, we find that a school district is not a "municipality" for the purposes of § 71.185.

■ As we note in *St. Joseph Light & Power Company v. Kaw Valley Tunneling, Inc. et al.*, 589 S.W.2d 260 (Mo. banc 1979), a municipality can perform both proprietary and governmental functions and loses sovereign immunity when performing proprietary functions. A special government district, on the other hand, is an arm of the state, and can by its nature perform only governmental functions for which it will enjoy sovereign immunity. *Id.*; *Page v. Metropolitan St. Louis Sewer District*, 377 S.W.2d 348 (Mo.1964). In *Rennie v. Belleview School District*, 521 S.W.2d 423 (Mo. banc 1975), the Court discarded a plaintiff's contention that a school district was not protected by sovereign immunity because it performed an allegedly proprietary function of maintaining a playground. "It would serve no useful purpose in this case, involving a school district *and not a municipality*, to enter the maze of the 'governmental-proprietary' dichotomy." 521 S.W.2d at 424 (emphasis added). Clearly, a municipality's particular liability for torts was not lost upon the legislature when it used the term "municipality" in its limited exception to the doctrine of sovereign immunity in § 71.185.

In the case at bar, appellant asserts that it is significant that Parkway School District ("Parkway") carried a policy of liability insurance and that it did so under § 71.185. Whether Parkway purchased insurance coverage erroneously in the belief that § 71.185 authorized it to do so, or whether Parkway purchased insurance in anticipation of the judicial abrogation of sovereign immunity, Parkway's insurance coverage, if any, is not determinative of the legal issue presented in this case. It goes without saying that a school district does not become a municipality by purchasing insurance under a statutory provision authorizing the purchase of insurance by municipalities.[4]

We hold that a school district is not a "municipality" for the purposes of § 71.185, RSMo 1978. The judgment of the circuit court is affirmed.

DONNELLY, WELLIVER and MORGAN, JJ., and FINCH, Senior Judge, concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of BARDGETT, C. J.

HIGGINS, J., not participating because not a member of the court when cause was submitted.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent. I acknowledge that credible arguments can be made on both sides of the question presented by this case. In this case the municipal corporation—the school district—did utilize public funds to pay the premiums attending the purchase of the public liability insurance which would afford protection to the school district in case of suits in tort. Section 71.185, RSMo 1978, in my opinion, authorizes a municipal corporation to utilize public funds to purchase liability insurance if

the municipal corporation chooses to do so. It enables that type of entity to waive governmental immunity to the extent of the insurance coverage purchased. I believe this type of law should be given the broadest interpretation, and, in the context of this statute, the term municipality should be interpreted to include any municipal corporation which had the benefit of governmental immunity from tort liability at the time the statute was passed. In this way the municipal corporation and the public get the full benefit of the expenditure of public funds by the municipal corporation, and there is no imposition of liability which was not foreseen and agreed to by the school district.

I therefore dissent.

---

4. As we stated earlier, the sole question before the Court is whether a school district is a municipality for the purposes of § 71.185, RSMo 1978. In determining that § 71.185 does not apply to school districts we make no judgment as to § 537.600 and its provisions concerning the purchase of insurance by public entities.